UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at Covington

LEONALDO ALFONZO          )
GRANADILLO-ARAMBULE,      )
                          )   Civil Action No. 2:26-cv-00036-SCM
          Petitioner,     )
                          )
v.                        )
                          )   **MEMORANDUM OPINION AND**
JAMES A. DALEY, et al.,   )   **ORDER**
                          )
          Respondents.    )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Leonaldo Alfonzo Granadillo-Arambule is a noncitizen who has been detained by the Department of Homeland Security since July 2025 while undergoing removal proceedings. [Dkt. 1, Pet., at 7; Dkt. 7, Resp., at 3]. He filed a petition for a writ of habeas corpus and a motion for a preliminary injunction asserting that, as a Venezuelan national, he has Temporary Protected Status ("TPS") under 8 U.S.C. § 1254a and therefore cannot be removed or detained. [Dkt. 1 at 11; Dkt. 9, Mot. for a Temporary Restraining Order and Prelim. Inj., at 1]. However, his TPS expired before his detention began because DHS terminated the relevant TPS designation for Venezuela as of April 7, 2025. *Termination of the Oct. 3, 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. 9,040, 9,041 (Feb. 5, 2025) (hereinafter, the "2025 Termination"). The Petitioner argues that he is nevertheless entitled to relief as a TPS holder because another district court declared DHS's termination of the TPS designation invalid. *See Nat'l TPS All. v. Noem*, No. 25-cv-01766-EMC, 2025 WL

3539156 (N.D. Cal. Dec. 10, 2025).  But that court lacked jurisdiction, and neither this Court nor the Respondents are bound by the declaration.  Thus, the habeas petition and motion must be denied.

## I.    Background

### A.    The Petitioner's Temporary Protected Status.

The Petitioner is a Venezuelan national who entered the United States in October 2022 without inspection.  [Dkt. 1 at 6; Dkt. 7 at 2].  He subsequently applied for TPS, which the United States Citizenship and Immigration Services granted on September 20, 2024.  [Dkt. 1-1, Approval for TPS, at 2].

TPS is a special form of relief from deportation that the Secretary of DHS may grant to nationals of a particular country.[1]  8 U.S.C. § 1254a.  If the Secretary finds that such country is experiencing ongoing conflict, a disaster, or other dangerous conditions, then the Secretary may designate that country for TPS relief, effective upon publication in the Federal Register.  *Id.* § 1254a(b)(1).  Noncitizens with valid TPS relief may not be removed from the United States or detained on the basis of their immigration status.  *Id.* § 1254a(a)(1)(A), (d)(4).  The initial effectiveness period lasts between 6 and 18 months, *id.* § 1254a(b)(2), and the Secretary must review the conditions in the designated country at least 60 days before the end of the initial period, *id.* § 1254a(b)(3)(a).  During the review, the Secretary must decide whether to terminate the designation via notice in the Federal Register or extend the designation

---

[1] Section 1254a originally granted this authority to the Attorney General, who subsequently delegated it to the Secretary of DHS.  *See Nat'l TPS Alliance*, 166 F.4th 739, 754 n.7 (9th Cir. 2026) (citation omitted); 8 U.S.C. § 1103(a).

for a period of 6, 12, or 18 months.  *Id.* § 1254a(b)(3).  To be eligible for TPS, a particular noncitizen must be continuously present in the United States since the effective date of the most recent designation of his or her country of origin, must have continuously resided in the United States since such date, must be admissible as an immigrant, and must have timely applied for TPS during the registration period.  *Id.* § 1254a(c)(1).

Venezuela was designated for TPS in 2021 when then-DHS-Secretary Mayorkas found that extraordinary and temporary conditions made it unsafe for Venezuelan citizens to return there.  *Designation of Venez. for [TPS]*, 86 Fed. Reg. 13,574 (Mar. 9, 2021).  Later, Venezuela's 2021 designation was extended through September 10, 2025, which applied to TPS beneficiaries who applied under the initial designation.  *Extension and Redesignation of Venez. for [TPS]*, 88 Fed. Reg. 68,130 (Oct. 3, 2023).  At the same time, then-Secretary Mayorkas redesignated Venezuela for TPS, which created a second track for relief that began on October 3, 2023, and would end on April 2, 2025.  *Id.*  Then, on January 17, 2025, then-Secretary Mayorkas consolidated the filing process for all Venezuelan TPS beneficiaries and extended the designations until October 2, 2026.  *Extension of the 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. 5,961 (Jan. 17, 2025).

However, then-DHS-Secretary Noem vacated the extension eleven days later, *Vacatur of 2025 TPS Decision for Venez.*, 90 Fed. Reg. 8,805 (Feb. 3, 2025), and on February 5, 2026, she terminated the 2023 Venezuela designation.  *Termination of the Oct. 3, 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. 9,040, 9,041 (Feb. 5,

2025). According to then-Secretary Noem, it was "contrary to the national interest to permit the covered Venezuelan nationals to remain temporarily in the United States," so the 2023 Venezuela designation was terminated effective April 7, 2025, while the 2021 designation would expire on September 10, 2025. *Id.*

Because the Petitioner arrived in the Unites States in 2022, he received TPS under the 2023 designation. [Dkt. 1 at 9 n.1; Dkt. 1-1 at 2]. According to the Petitioner's USCIS receipt, his TPS was valid through April 2, 2025, [Dkt. 1-1 at 2], and on that date he applied for renewal, [Dkt. 1-3, TPS Renewal Application, at 2]. But his renewal application was never granted because of DHS's termination of the 2023 Venezuela designation.

On July 16, 2025, the Petitioner was arrested in Chicago, Illinois, pursuant to an administrative warrant because—according to DHS—his TPS had lapsed. [Dkt. 1 at 7; Dkt. 7-2, Arrest Warrant]. At that time, DHS also learned that the Petitioner was arrested in December 2024 for "aggravated assault—deadly weapon and domestic violence," which was dismissed by nolle prosequi. [Dkt. 7-3, Warrant for Arrest of Alien, at 3]. DHS initiated removal proceedings by serving the Petitioner with a Notice to Appear, [Dkt. 7 at 3], and transferred him to the Campbell County Detention Center in Newport, Kentucky, where he remains in immigration custody, [Dkt. 1 at 5, 7]. On March 9, 2026, the immigration court denied the Petitioner's motion to terminate removal proceedings, but the court granted him pre-conclusion voluntary departure under 8 U.S.C. § 1229c(a)(1). [Dkt. 9 at 2 (citing Dkt. 9-2, Order of the Immigration Judge)].

4

The Petitioner then filed his Petition for a Writ of Habeas Corpus on February 2, 2026, seeking his immediate release from detention. [Dkt. 1 at 14]. The Respondents include James A. Daley as the Warden of the Campbell County Detention Center, Russell Hott as the Director of the Chicago ICE Field Office, Todd M. Lyons as the Acting Director of ICE, Kristi Noem as then-Secretary of DHS, and Pamela Jo Bondi as then-Attorney General of the United States. [*Id.* at 5–6]. The Petitioner argues that his detention violates § 1254a and his right to due process under the Fifth Amendment because he is a TPS beneficiary. [*Id.* at 9–10]. Thus, he seeks relief through a writ of habeas corpus, which "is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

The Petitioner also filed an *Ex Parte* Motion for a Temporary Restraining Order and Preliminary Injunction, [Dkt. 9], based on the same grounds as his Petition. The Court declined to consider the motion *ex parte* and held oral arguments on the Petition and Motion on April 2, 2026.

## B. The temporary-protected-status litigation in the Northern District of California.

The merits of the Petitioner's Petition and Motion are intertwined with a pending case in the Northern District of California. *See Nat'l TPS All. v. Noem*, No. 25-cv-01766-EMC (N.D. Cal. filed Feb. 19, 2025) (hereinafter "*NTPSA*"). In fact, as the Petitioner's counsel made clear at oral argument, the Petitioner's entire case is premised on the supposed preclusive effect of that case. Brought by the National TPS Alliance—an organization of TPS holders—*NTPSA* involves a challenge to the vacatur of the January 17, 2025, extension and the termination of Venezuela's TPS

5

status.  773 F. Supp. 3d 807, 823 (N.D. Cal. 2025).  The Petitioner is a member of the National TPS Alliance, [Dkt. 1 at 7; Dkt. 1-4, Email Confirmation of National TPS Alliance Membership], but it is unclear when he first became a member.

The district court in *NTPSA* initially granted the plaintiffs' motion to postpone then-Secretary Noem's vacatur and termination.  773 F. Supp. 3d at 815.  It reasoned that § 1254a and the APA did not authorize the DHS Secretary to terminate a country's TPS designation before it expired.  *Id.* at 849.  Further, the court found that the vacatur "was arbitrary and capricious because it was based on legal (as well as factual) error" regarding how § 1254a works.  *Id.* at 854.  The court noted that the postponement order acted as a form of nationwide relief.  *Id.* at 866 ("[W]here agency action is challenged as a violation of the APA, nationwide relief is commonplace.").  At the Government's request, the Supreme Court stayed the postponement order "pending the disposition of the appeal . . . and disposition of a petition for a writ of certiorari, if such a writ is timely sought."  *Noem v. Nat'l TPS All.*, 145 S. Ct. 2728, 2729 (2025) (mem.).  On appeal, the Ninth Circuit affirmed the district court's order, reasoning that the plaintiffs would likely prevail on the merits regarding § 1254a and the APA.  *Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1024–27 (9th Cir. 2025).  However, the Supreme Court's stay remains in effect.  *Noem*, 145 S. Ct. at 2729.

Following the Supreme Court's issuance of a stay, the *NTPSA* district court granted the plaintiffs' motion for summary judgment on their APA claims regarding the vacatur and termination and then set aside those DHS decisions.  798 F. Supp. 3d 1108, 1162–64 (N.D. Cal. 2025) (stating that this relief would be "nationwide"

6

pursuant to 5 U.S.C. § 705 of the APA). Once again, the Supreme Court stayed the district court's order pending appeal and the disposition of a petition for a writ of certiorari, noting that "the parties' legal arguments and relative harms" had not changed. *Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025) (mem.). And once more, the Ninth Circuit affirmed the district court's order, *National TPS All. v. Noem*, 166 F.4th 739, 749 (9th Cir. 2026), which remains under the Supreme Court's stay, *Noem*, 146 S. Ct. at 24.

Despite having been stayed by the Supreme Court twice, the district court came back for a third bite at the apple. That order—which the Petitioner relies upon here—granted the plaintiffs' motion for declaratory relief. *NTPSA*, 2025 WL 3539156, at *3 (N.D. Cal. Dec. 10, 2025), *appeal docketed*, No. 26-187 (9th Cir. Jan. 9, 2026). That order was based on the same legal theories the district court had already considered. Indeed, the court noted that "the requested declaratory relief is essentially derivative of the earlier judgment" in the case. *Id.* at *1. In other words, the grant of declaratory relief was "predicated on [the district court's] ruling now pending appeal, [and] does not materially alter the status of that appeal." *Id.* at *2 ("Furthermore, the declaratory relief issued here may help preserve the pending status quo for individual members of the [National TPS Alliance]."). The Government appealed that order, which appeal remains pending, but no stay was sought.

## II.    Analysis

### A.    This Court cannot grant relief because § 1254a(b)(5)(A) prohibits it from reviewing the termination of Venezuela's TPS designation, and the Petitioner's due-process claim is meritless.

Before assessing the merits, the Court must resolve the bounds of its subject-

matter jurisdiction over the Petition.  The TPS statute prohibits "judicial review of *any* determination of the [Secretary] *with respect to* the designation, or termination or extension of a designation, of a foreign state."  8 U.S.C. § 1254a(b)(5)(A) (emphasis added).  According to the Respondents, this strips the Court of subject-matter jurisdiction to review any TPS determinations, including the Secretary's decision to vacate the extension and terminate the 2023 Venezuela designation.  [Dkt. 7 at 5–6].  The Petitioner does not disagree.  Nor can he.

There is a presumption of judicial review of administrative actions, but Congress can foreclose judicial review explicitly through the text of a statute or implicitly through its structure.  *See Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986); *Patel v. Garland*, 596 U.S. 328, 332–33 (2022).  Here, the plain text of § 1254a demonstrates that Congress chose an explicit and broad prohibition on judicial review of the Secretary's TPS determinations.  *See* 8 U.S.C. § 1254a(b)(5)(A).  The word "any," gives expansive meaning to a provision.  *Patel*, 596 U.S. at 338 (broadly construing 8 U.S.C. § 1252(a)(2)(B)(i) to "prohibit[] review of *any* judgment *regarding* the granting or relief under § 1255 and the other enumerated provisions").  Similarly, a provision's use of "with respect to," followed by a subject, suggests that Congress intended a broader meaning.  *Cf. United States v. Tohono O'Odham Nation*, 563 U.S. 307, 312–13 (2011) (construing the phrase "in respect to").  Thus, "[t]he plain text of the statute gives little leeway for courts to review terminations of TPS status, as such determinations fall squarely within the purview

8

of the political branches."[2]  *Mlaih v. Noem,* No. 3:26-CV-00577-O, 2026 WL 787536, at *3 (N.D. Tex. Mar. 19, 2026) (citing *Munaf,* 553 U.S. at 700–01).

It makes sense that Congress would exclude the courts from reviewing decisions regarding TPS designations and terminations.  This approach is a sensible way to avoid invading the Executive Branch's province over immigration matters. *See id.*  Moreover:

> It is pertinent to observe that any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government.  Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.

*Harisiades v. Shaughnessy,* 342 U.S. 580, 588–89 (1952).  Thus, it is not surprising that Congress would prohibit courts from reviewing decisions regarding TPS designations and terminations.

But while this Court cannot review any claim that the Petitioner is being detained unlawfully because the TPS termination was invalid, there is one avenue of judicial review the Petitioner can pursue.  Section 1254a(b)(5)(A) does not prohibit a court from reviewing a constitutional challenge to the nature of a habeas petitioner's detention.  *See Mlaih,* 2026 WL 787536, at *3; *McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 492 (1991).  Section 1254a(b)(5)(A) applies to any particular TPS

---

[2] The Ninth Circuit found that § 1254a(b)(5)(A) does not use sufficiently broad language to preclude judicial review of all the DHS Secretary's determinations, but its analysis is not convincing.  *See NTPSA,* 166 F.4th at 756.  The attempted distinction between "any determination" versus "all causes … arising" or "all questions of law and fact," *see id.*, falls flat given the plainly expansive language used in the statute.

determination—not to constitutional claims related to the practices used to carry out the statute. *See McNary*, 498 U.S. at 492. Thus, the Court may assess the Petitioner's Fifth Amendment due-process claim because that claim addresses his constitutional rights rather than any statutory rights he might be asserting in relation to the TPS designation or termination. Put differently, the Petitioner's claim under the Fifth Amendment is not a claim for "judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state." 8 U.S.C. § 1254a(b)(5)(A). As a result, the Court can review that claim. But that does not get the Petitioner very far.

It is true that noncitizens like the Petitioner have due process rights even though they are present in the country without ever having been admitted. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). However, their right to due process goes no further than the process Congress has chosen to give them. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138–39 (2020). So for the Petitioner to succeed on a due-process claim, he must show that DHS is detaining him in violation of the powers Congress bestowed upon it. *See id.* He cannot make such a showing.

Here, the Petitioner is detained while undergoing removal proceedings before an immigration court in accordance with the Immigration and Nationality Act, and he does not claim that these proceedings are deficient in any way. Thus, the Petitioner is receiving all the process that Congress afforded for a noncitizen who is

not entitled to TPS and, therefore, is not statutorily shielded from detention under § 1254a(d)(4). So his due-process claim fails.

To recap, the Petitioner cannot challenge the validity of the TPS termination itself, and he has no meritorious argument that his detention is unconstitutional. Recognizing this, the Petitioner does not attack the validity of the TPS termination in so many words. Instead, he contends that he is not arguing that his detention is unlawful because the TPS termination was invalid, but that his detention is unlawful because this Court and the Respondents are bound by the *NTPSA* court's declaration that the vacatur and termination were invalid. [Dkt. 1 at 9–10 (citing *NTPSA*, 2025 WL 3539156 at \*3)]. The Petitioner's argument is clever, but unavailing. It draws distinctions that make no difference. As explained below, neither this Court nor the parties are bound by the *NTPSA* court's declaration. So the only way that court's declaration can be helpful to the Petitioner is if this Court is persuaded that the declaration was correct on the merits. In other words, this Court would have to be convinced that the *NTPSA* court correctly concluded that the TPS termination was invalid. And that necessarily means this Court would have to review the TPS termination on its merits, which it cannot do.

> **B.      Neither this Court nor the Respondents are bound by the *NTPSA* court's declaration.**

As the Petitioner acknowledges, his only hope is to convince this Court that it and the Respondents are bound by the *NTPSA* court's declaration. Otherwise, he is merely making a challenge to the TPS termination, which—as explained above—this Court cannot consider. Ultimately, the *NTPSA* court's declaration is not binding on

this Court, nor does it have any preclusive effect on the Respondents. So the petition must be denied. There are at least two reasons for this. First, the declaration exceeded the *NTPSA* court's jurisdiction. And second, the declaration cannot be used for collateral estoppel against the Government Respondents.

This Court is not bound by the judgment of another court entered without jurisdiction. *Earle v. McVeigh*, 91 U.S. 503, 507 (1875) ("[T]he want of jurisdiction is a matter that may always be set up against a judgment when sought to be enforced, or where any benefit is claimed under it, as the want of jurisdiction makes it utterly void and unavailable for any purpose." (citation omitted)). In addition to the fact that the *NTPSA* court exercised judicial review over a question that Congress specifically placed outside its jurisdiction via § 1254a(b)(5)(A), the court also exceeded its authority in light of the Supreme Court's stay orders and effectively attempted to issue nationwide relief relating to habeas petitions for National TPS Alliance members.

A stay of an order's enforcement pending appeal "suspend[s] judicial alteration of the status quo," such that the lower court cannot enter a conflicting order until the stay is lifted. *Nken v. Holder*, 556 U.S. 418, 429 (2009). In *NTPSA*, the district court issued two orders that were stayed by the Supreme Court pending a writ of certiorari,[3] and then the court entered a declaratory judgment on the same grounds

---

[3] The Petitioner argues that the stays do not apply to the December 10 declaratory judgment because the Supreme Court did not precisely specify why it ordered the stays. But the Supreme Court acknowledged that the second stay was appropriate because the same "legal arguments and relative harms" were at issue following the first stay. *Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (Oct. 3, 2025) (mem.). And, naturally, the Supreme Court would have considered the likelihood of success on the

despite the stay orders and despite the fact that there was a pending appeal. 2025 WL 3539156, at *3. So that declaratory judgment exceeded the district court's authority to the extent it altered the status quo in any way. Judge Liburdi for the District of Arizona said it best:

> Put simply, issuing a judgment that would bind the government in over 84,000 individual cases based on reasoning that has been stayed and cannot be enforced, and requiring the government to release and refrain from removing individuals that it may be legally permitted to detain and remove goes too far in defiance of the stay order.

*Sanchez Herrera v. Noem*, No. CV-26-00625-PHX-MTL (JFM), 2026 WL 800721, at *6 (D. Ariz. Mar. 12, 2026).

Setting the stays aside, the *NTPSA* court's declaratory judgment still lacks jurisdiction to control in a subsequent suit for habeas relief challenging a particular petitioner's detention. *See Calderon v. Ashmus*, 523 U.S. 740, 749 (1998); *see also Forsythe v. State of Ohio*, 333 F.2d 678, 679 (6th Cir. 1964) ("[T]he Declaratory Judgment Act . . . cannot be used as a substitute for appeal, habeas corpus, coram nobis, or other procedures enjoying currency among the many now seeking release from prison."); *Monk v. Sec'y of Navy*, 793 F.2d 364, 368 (D.C. Cir. 1986) ("If the prisoner seeks . . . relief that will result in immediate or more speedy release, then habeas is the exclusive federal remedy."). Claims that "necessarily imply the invalidity" of confinement and removal "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). And only "the district of

---

merits when granting the stays. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). So the stays must be construed to prohibit the declaratory judgment.

confinement" has jurisdiction over core habeas petitions. *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004). The claims in *NTPSA* necessarily imply the invalidity of the Government's detention and removal of National TPS Alliance members, but the case was not brought in habeas, was not filed in the Petitioner's district of confinement, and was not brought against the parties confining the Petitioner. Thus, the declaratory judgment is not binding on this Court.

The Petitioner also argues that the declaratory judgment in *NTPSA* collaterally estops the Government from contending that the termination of Venezuela's 2023 TPS designation was valid. The Petitioner is mistaken. He is trying to have the termination issue decided in one district court so that he can prevent the Government from relitigating that issue elsewhere. Courts often exercise their discretion to reject this "offensive use of collateral estoppel" because it is typically unfair to the defendant. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329–30 (1979). When the Government is the defendant, offensive collateral estoppel is even less appropriate.[4] *See United States v. Mendoza*, 464 U.S. 154, 162 (1984)

---

[4] Typically, collateral estoppel can only be used against the Government when there is mutuality between the parties in the prior case and in the present case. *See Trump v. CASA, Inc.*, 606 U.S. 831, 852 n.13 (2025) (citing *United States v. Mendoza*, 464 U.S. 154, 155 (1984)). The Petitioner was not a named party in the *NTPSA* litigation, so mutuality would only exist if he is in privity with the National TPS Alliance. However, the law is unclear whether a member of an organization is in privity with that organization for the purposes of collateral estoppel. *See Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 541 (6th Cir. 2021) (identifying the open question of whether members may rely on a judgment if the organization wins or be bound if it loses). And this issue becomes even more unclear if the member joined the organization after the relevant judgment was issued, which may be the case here. [*See* Dkt. 1-4, Email Confirmation of National TPS Alliance Membership, at 5 (suggesting that the Petitioner became a member in January, 2026)].

("[N]onmutual offensive collateral estoppel simply does not apply against the government in such a way as to preclude relitigation of issues such as those involved in this case.").

Here, the circumstances counsel against permitting the Petitioner to use offensive collateral estoppel.  In *NTPSA*, the Northern District of California exceeded its jurisdiction by repeatedly attempting to sidestep the Supreme Court's stays of its orders.  Importing that court's declaratory judgment to estop the Government in other courts, like this one, would effectively nullify the Supreme Court's order to maintain the status quo.  *Cf. Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2663 (2025) (mem.) (Gorsuch, J., concurring in part and dissenting in part) ("Lower court judges may sometimes disagree with this Court's decisions, but they are never free to defy them.").

Permitting the Petitioner to use offensive collateral estoppel against the Government would also contradict the Supreme Court's prohibition against nationwide injunctions.  *See Trump v. CASA, Inc.*, 606 U.S. 831 (2025).  *CASA* provides that it is improper for a district court to issue a ruling that sweeps across the entire nation and precludes other courts with different parties from considering the issue.  *See id.* at 844, 861.  The Petitioner argues that *CASA* is inapposite because this Petition is based on a declaratory judgment, not an injunction.  But the Supreme Court's reasoning encompasses declaratory judgments.  *See id.* at 844 ("'[N]either declaratory not injunctive relief,' we have said, 'can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular

15

federal plaintiffs.'" (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975))). And the Petitioner is trying to use the declaratory judgment just like an injunction to compel the Government Respondents to release him from detention. Thus, permitting this use of collateral estoppel would be even less appropriate in light of *CASA*.

The Petitioner asserts no other bases under § 1254a to support his claim to TPS relief at the time of his detention. At bottom, there is no way around the conclusions that the Petitioner's TPS expired on April 2, 2025, [Dkt. 1-1 at 2], and DHS's termination of the 2023 designation is still in operative legal effect. *See Camargo Navas v. Att'y Gen.*, No. 26-66-DLB, 2026 WL 797142, at *2 (E.D. Ky. Mar. 23, 2026) (rejecting a similarly situated habeas petition for the lack of valid TPS). Thus, § 1254a does not bar the Respondents from detaining the Petitioner.

## III.    Conclusion

For the foregoing reasons, it is hereby **ORDERED** that Granadillo-Arambule's Petition for a Writ of Habeas Corpus, [Dkt. 1], is **DENIED** and will be **DISMISSED WITH PREJUDICE**.[5]  And because his Motion for a Preliminary Injunction, [Dkt. 9], rises and falls with his Petition, it is hereby **DENIED** as moot. A separate Judgment will be entered.

Signed this 29th day of April, 2026.



S. Chad Meredith, District Judge
United States District Court
Eastern District of Kentucky

---

[5] One of the Respondents in this matter, James Daley, contends that he is not a proper Respondent in this case because he is not the Petitioner's legal or immediate custodian. [Dkt. 6, James Daley's Resp., at 2–8]. Due to this Court's disposition of the Petition, it is not necessary for the Court to consider this issue.